## CITY SAVINGS BANK & TRUST CO v PLUCHEL, et.

Ohio Appeals, 5th Dist, Stark Co.

Decided Dec. 31, 1930

Day & Day, Cleveland, and Sidney L. Geiger, Alliance, for Bank.

Joseph B. Keenan, Cleveland, Curtis M. Shetler, Canton, and John L. Weisend, Cleveland, for Pluchel, et.

## MONTGOMERY, J.

Numerous assignments of error are made in the petition in error, but these assignments can readily be reduced to three or four propositions.

The issues in brief, were first: Whether or not this money was ever deposited in this box by Pluchel, and if so, was it ever abstracted therefrom by any person other than Pluchel, or without his knowledge and consent? Second: If this money was abstracted from the box by some representative of the bank, was this conduct on the part of such representative such as to bind the bank and make it liable for the loss of this money?

The questions with reference to whether or not the money was deposited, and whether or not it was abstracted by persons other than Pluchel, or without his knowledge and consent, were questions of fact for the jury.

We find, from an examination of the record, that the trial court committed no error in the introduction or the exclusion of evidence, or in its charge to the jury upon these questions of fact, and that they were properly submitted to the jury, and the jury found against the contention of the bank, which finding is not manifestly against the weight of the evidence, and there would be no justification for disturbing the verdict of the jury. In fact, there are but two assignments of error to which we feel justified in directing specific attention. As to the other assignments of error we find no difficulty and see nothing in the record upon which they could be based which is prejudicial to the plaintiff in error.

The two assignments of error to be discussed, are, first: The form of the verdict, in view of the pleadings and the evidence, and, second—the question of whether or not Schaffer was acting in such manner as to bind the bank by his action, it being obvious from the verdict that the jury must have found, and did find that Schaffer, assistant cashier of the bank, abstracted this money from the box.

Discussing the first assignment of error: Complaint is made that as the case was submitted to the jury there were four plaintiffs, and that the verdict as rendered is simply on behalf of the "plaintiff." This is the form submitted by the clerk and the form which the jury signed. There is no complaint of defect of parties plaintiff. Indeed, as has been noted, these additional parties were made parties plaintiff at the suggestion of the defendant below on the ground that they might have some beneficial interest in this money. Having been parties to this proceeding they are bound by the final result and, certainly, the plaintiff in error cannot be prejudiced by this technical error in the form of the verdict. It runs no risk of being involved in the future in any other litigation by any of these parties as to this transaction, because they are precluded or estopped by this verdict.

As to the second question to which we direct our attention, and which is the one most strenuously urged by counsel for plaintiff in error: Assuming, from the record and from the verdict of the jury, based upon the evidence that Schaffer took this money, is the bank liable because of his act? The evidence shows that this safety deposit box was of the ordinary kind, operated in the manner of safety deposit boxes with which we are all familiar, to-wit: that such a box can be opened only by the simultaneous insertion of two keys in two different slots, one a so-called customer's key, obtained by the bank and given to the customer, and the other a guard key, remaining in the possession of the bank. The admission of the defendant and the answer show that Schaffer was an officer of the bank, to-wit, assistant cashier, and the evidence further shows that he was the officer of the bank in charge of these safety deposit boxes, having access to the guard keys; that he, as such officer of the bank, ordered these duplicate customers' keys for the Pluchel box, and that these keys were paid for out of the funds of the bank. As to his conduct subsequent to obtaining the keys and subsequent to the time that Pluchel learned of his loss, nothing need be said, except that such conduct was naturally one of the factors in inducing the jury to return the verdict which it did return. Under this state of facts is the bank liable? The contention is made by plaintiff in error that, assuming that Schaffer took this money, he was acting beyond the scope of his authority so that the bank cannot be bound.

Mr. Thomas B. Paton, Jr., general counsel for the American Bankers Association, in his Digest issued for the guidance of American bankers, discusses the liability of banks for the wrongful acts of bank officers and lays down the general rule on page 121 that a bank, or any other corporation, is liable for torts committed by its

servants, or its agents, precisely as a natural person.

In 3 R. C. L., Section 86, under the topic "Liability for Wrongful Act of Officer or Agent," this pronouncement is made:

"According to these principles a bank is libale for the fraudulent act of its president committed in the course of his duties and employment, although the directors of the bank have no knowledge of it and do not authorize such fraud. It is also liable for the fraudulent acts of its cashier done within the apparent, though not real, scope of his agency."

Hale on Bailments, Section 72, in the note discussing illustrative cases of special bank deposits and the question of responsibility for the act of any agent, states the rule, apparently, to be that a bank is liable for the felonious act of its cashier, when acting in the course of his employment, if not in the scope of it.

Plaintiff in error cites and places relience upon the case of Foster v. Essex Bank, 17 Mass., 478, and a line of cases following that decision. It is to be noted, however, that the case of Foster. v. Essex Bank was expressly disapproved and criticised by the Supreme Court of the United States in the case of Preston v. Prather et al., 137 U. S., 604. Referring to the Foster case and others of similar holding, the Supreme Court, in the Preston case, says:

"The doctrine of exemption from liability in such cases was at one time carried so far as to shield the bailees from the fraudulent acts of their own employees and officers, though their employment embraced a supervision of the property, such acts not being deemed within the scope of their employment."

It is true that this Preston case is based on a somewhat different state of facts, but, nevertheless, it is sufficient to show that the Supreme Court of the United States has disapproved this doctrine laid down in Foster v. Essex Bank. This Preston case is cited with approval by the Supreme Court of Illinois in the case of Gray v. Merriam, reported in 35 N. E., page 810 the first branch of the syllabus of which is as follows:

"United States bonds, deposited by plaintiff with the defendant bankers as a special deposit, were stolen by defendants' cashier, who had access to them for the purpose of cutting of the interest coupons as they fell due. A year before the theft the defendants had notice that the cashier was speculating in grain and they did not for-

bid his doing so. Held: That the defendants were guilty of such gross negligence as to make them liable, although they were mere gratuitous bailees."

Decidedly in point are certain cases passed upon by the Court of Appeals of Franklin county in January, 1930, being cases No. 1789 to 1794, inclusive, in that court. These were cases growing out of the loss of bonds from safety deposit boxes in the Peoples' Bank Co. of Frazeyburg, Ohio. These bonds, in the several instances, were shown to have been taken from the boxes by one Browning, formerly cashier of the bank, and then deceased. The facts in these cases were somewhat different, because in many instances Browning was permitted to have the customer's key, also. The Court of Appeals of Franklin county in passing upon these cases stated:

"There is some testimony tending to show that Browning had access to some of the boxes by means independent of the keys put into his possession by the box holders.

"Under this state of facts the trial court held that the relationship existing between the box holders and the bank was that of bailment; that when the plaintiff had shown the rental of the box from the bank, the placing of the securities therein and the failure of the bank to return them on demand, a **prima facie** case was made out against the bank; that the defendant could not assert its want of knowledge of the honesty of its officer, the cashier, as a defense against its liability as bailee."

The Court of Appeals of Franklin county affirmed the judgment of the lower court with this statement: "We are of the opinion that the court was sound in its conclusion as to the law of this case."

We think the case of the **National Liberty Insurance Company of America v. The Sturtevant-Jones Co., 116 Oh St 299,** to which counsel refer in their briefs, is decidedly in point. The syllabus in that case is as follows:

"Where a contract of bailment contains no exemption from liability on account of unauthorized acts of the servants of the bailee, no act of the servant of the bailee, whether or not authorized by the bailee, committed while the servant is in possession of the subject of bailment by authority of the bailee, is effective to abrogate the contract between the bailor and the bailee nor to absolve the bailee from liability to the bailor for a breach of such contract, which if done by the bailee in person would not accomplish such result."

Valuable, too, is the case of **Dietrich v. Peters, 28 Oh Ap 427,** which follows the reasoning in the Sturtevant-Jones case, and which also quotes with approval the case of Fatta v. Edgerton, 143 App. Div., 658; 128 N. Y. S., 181, which holds:

"The principal, and not a third person, is liable for any loss caused by his agent's conversion of property which came into his hands by virtue of the relations of agency."

Attention is directed, also, to the case of **Bank v. Blakesley, 42 Oh St., page 646.** The second branch of the syllabus in this case is as follows:

"2. Where a transaction with an incorporated banking association properly pertains to the business of such an association, neither the abuse or disregard of his authority by its managing officer or agent, nor his fraud or bad faith will be permitted to be shown in defense of such bank in an action against it by an innocent party, growing out of such transaction."

In the case at bar Schaffer was an officer of the bank, not simply a bookkeeper, watchman, or other employee. He was the officer having the direct charge over these boxes and having the authority to order necessary keys. He spoke for the bank more than any other officer would, or could, have done, under the circumstances. As we view it, so far as this transaction is concerned, he was the bank and, obviously, the bank, the corporation, must respond for the acts of this man who was, in this instance, its **alter ego.**

We find no error in the judgment of the Court of Common Pleas and the same is, therefore, affirmed and this cause is remanded for execution.

Lemert, PJ, and Sherick, J, concur.